# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALTON NOLEN, | |
| Petitioner, | |
| v. | Case No. CIV-22-272-F |
| | Judge Stephen P. Friot |
| JIM FARRIS, Warden, | Magistrate Judge Gary M. Purcell |
| Oklahoma State Penitentiary, | |
| Respondent. | |

## MOTION FOR DISCOVERY
## AND CONSOLIDATED BRIEF IN SUPPORT

Alton Nolen, through undersigned counsel, respectfully moves for discovery and in support states:

1. Mr. Nolen's Petition for Writ of Habeas Corpus is being filed contemporaneously with this motion.

2. Since undersigned counsel's appointment in April 2022, ECF No. 5, members of the legal team have attempted to visit Mr. Nolen a number of times (almost monthly). Mr. Nolen has refused a visit each time; he refuses to leave his cell. When members of the legal team have been permitted to see Mr. Nolen at his cell door, he will not sign releases. While counsel has sent Mr. Nolen legal correspondence, including releases, it is unknown whether Mr. Nolen has received, read, or understands such correspondence. Undersigned counsel has received no written response to or acknowledgement of the letters the office has sent from Mr. Nolen.

3.  Undersigned counsel has been unable to obtain any records for Mr. Nolen without a signed authorization for release of records from him. These records are relevant to Claims I and II in Mr. Nolen's petition – that Mr. Nolen is intellectually disabled and ineligible for the death penalty, and that Mr. Nolen was incompetent to stand trial. *See, e.g.*, *Grant v. Royal*, 886 F.3d 874, 893 (10th Cir. 2018) (finding "post-conviction evidence can often be relevant to establishing substantive incompetency" (internal citation omitted)).

5.  In light of counsel's efforts and Mr. Nolen's limitations, these records are not procurable by counsel's exercise of diligence alone; an order from the Court is needed to obtain them.

## LEGAL STANDARDS

7.  Under Rule 6 of the Rules Governing § 2254 Proceedings, a habeas petitioner is entitled to conduct discovery on a showing of "good cause." A petitioner establishes "good cause" when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). "[I]t is the duty of the court" to grant discovery "to provide the necessary facilities and procedures for an adequate inquiry." *Bracy*, 520 U.S. at 909 (quoting *Harris*, 394 U.S. at 300). When considering a petitioner's discovery requests, a court must first decide whether petitioner has alleged the elements of a claim he wishes to prove, and then decide whether he has made "specific allegations" that support the particular request. If the petitioner has met these requirements establishing "good cause," the court should authorize discovery. *Id*.

2

8. Because the purpose of post-conviction discovery "is to ensure that the facts underlying [habeas] claims are adequately developed," a court must allow discovery when "a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief." *Harris*, 394 U.S. at 291. A court may not deny a petitioner's discovery motion "if there is a sound basis for concluding that the requested discovery might allow him to demonstrate" his entitlement to relief. *Id.*[1]

9. In addition, "[t]he very nature of [habeas proceedings] demands that [they] be administered with the initiative and flexibility essential to insure that miscarriages of justice within [their] reach are surfaced and corrected." *Id.* Capital cases in particular underscore the need for heightened procedural safeguards because the sentence is final and irreversible. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 422 (1995) (The "duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case."); *Woodson v. North Carolina*, 428 U.S. 280, 301-05 (1976) (discussing need for heightened reliability in a capital proceedings). The requirement of heightened reliability has been extended to all aspects of the proceedings leading to a death sentence, including habeas review. *See Douglas v. Workman*, 560 F.3d 1156, 1194 (10th Cir. 2009) (applying a "heightened concern for fairness" in capital habeas review). Particularly in light of the

---

[1] A habeas "[p]etitioner need not show that the additional discovery would definitely lead to relief. Rather, he need only show good cause that evidence sought would lead to relevant evidence regarding his petition." *Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000).

constitutionally heightened procedural safeguards, Mr. Nolen is entitled to discovery to prove his claims.

7.  Moreover, Mr. Nolen has a constitutional right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To provide effective assistance in a capital case such as Mr. Nolen's, "[i]t is unquestioned that . . . counsel ha[s] an 'obligation to conduct a thorough investigation of [Mr. Nolen's] background'" for information relevant to capital sentencing. *Porter v. McCollum*, 558 U.S. 30, 39 (2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 396 (2000)); *Rompilla*, 545 U.S. 374, 387 (2005) (counsel has a "duty . . . to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction") (quotation omitted). Such an investigation, and the resulting witnesses and "supporting documentation (e.g., school records, military records)[, are used] to provide medical, psychological, sociological, cultural or other insights into the client's mental and/or emotional state and life history that may explain or lessen the client's culpability for the underlying offense(s); to give a favorable opinion as to the client's capacity for rehabilitation, or adaptation to prison; to explain possible treatment programs; or otherwise support a sentence less than death; and/or to rebut or explain evidence presented by the prosecutor . . . ." *ABA Guidelines*, Guideline 10.11(F) – The Defense Case Concerning Penalty. As the *ABA Guidelines* advise:

> Counsel should use all appropriate avenues including signed releases, subpoenas, court orders, and requests or litigation pursuant to applicable open records statutes, to obtain all potentially relevant information pertaining to the client, his or her siblings and parents, and other family members, including but not limited to:

4

  a. school records
  b. social service and welfare records
  c. juvenile dependency or family court records
  d. medical records
  e. military records
  f. employment records
  g. criminal and correctional records
  h. family birth, marriage, and death records
  i. alcohol and drug abuse assessment or treatment records
  j. INS records

*ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* ("*ABA Guidelines*"), Guideline 10.7, commentary (Rev. Feb. 2003). This obligation applies with equal force to postconviction counsel: "[c]ounsel *at every stage* have an obligation to conduct thorough and independent investigations relating to the issues of both guilt and penalty." *ABA Guidelines*, Guideline 10.7(A) – Investigation (emphasis added).

## MR. NOLEN'S SPECIFIC REQUESTS

10. Counsel for Mr. Nolen seek records from (1) institutions from which they have no records to date, and (2) an institution that prior counsel received records from that are no longer current or where investigation has indicated the records may be incomplete. Mr. Nolen requests that the following institutions be ordered to produce the following records relating to Mr. Nolen:

**(1) Institutions from which Counsel Has No Records To Date**

 **Employment Records**

  a. **Tyson Food, Inc.**, 5322 S. Park Dr., Broken Bow, OK 74728: Mr. Nolen worked at Tyson Food around 2009-2010. Counsel seeks Mr. Nolen's complete employment records, including but not limited to employment

      application, employment agreement, work schedule, attendance record, progress notes, performance evaluations/reviews, and complaints.

  b. **Langston University/Langston University Facilities Management**, P.O. Box 1500, Langston, OK, 73050: Mr. Nolen worked for Langston University Facilities Management cleaning and painting dorm rooms during Summer 2010. Counsel seeks Mr. Nolen's complete employment records, including but not limited to employment application, employment agreement, work schedule, attendance record, progress notes, performance evaluations/reviews, and complaints.

**Medical Records**

  a. **McCurtain Memorial Hospital**, 1301 East Lincoln Road, Idabel, OK 74745: Mr. Nolen was born at McCurtain Memorial Hospital on August 16, 1984, and treated at McCurtain Memorial Hospital from 2008 to 2009. Counsel seeks any records for Mr. Nolen, including notes/reports/records from any and all nurses, doctors, counselors, social workers, or any other professional Mr. Nolen saw while at the institution; medical records; mental health records/reports; and medication logs.

**(2) Institutions from which Counsel Has Received Some Records**

**Incarceration Records**

  a. **Oklahoma Department of Corrections (DOC)**, 3400 North Martin Luther King Avenue Oklahoma City, OK 73111-4298

  Mr. Nolen is currently incarcerated in the following institutions. His inmate number is 634241. Counsel seeks all records contained in the Oklahoma Department of Corrections Fields Jacket on Mr. Nolen from March 1, 2022 to present and Mr. Nolen's entire medical record, including mental health, from March 1, 2022 to the present. This includes medical, psychological, and/or psychiatric assessments and evaluations; any notes and reports by medical and psychiatric doctors, psychologists, psychological/psychiatric technicians, nurses, counselors, social workers, or correctional officers; other medical records, including treatment records, reports, and notes; copies of records provided to assist in the any evaluation processes; copies of tests administered and test scores; other mental health records/reports, including therapy records and notes; medication charts and medication history; lab records and results; and any other treatment received in Oklahoma Department of Corrections facilities.

11. Mr. Nolen has raised a claim that he is intellectually disabled and ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002) (Claim I). Counsel has investigated in connection with this claim. This includes an investigation into Mr. Nolen's adaptive behavior, which are the "collection of conceptual, social, and practical skills that have been learned and are performed by people in their everyday lives." *See Intellectual Disability: Definition, Diagnosis, Classification, and Systems of Supports, 12th Ed.*, American Association on Intellectual and Developmental Disability (2021), at 29. Educational records, social service records, medical records, mental health records, and employment records, are all relevant to Mr. Nolen's adaptive functioning *Id.* at 41 (requiring "thorough social, medical, and educational history" in the retrospective assessment of adaptive behavior). Accordingly, Mr. Nolen's employment records and McCurtain Memorial Hospital records may contain information that is relevant to his *Atkins* claim.

12. Counsel has also raised a claim that Mr. Nolen was not competent to stand trial. The Oklahoma Department of Corrections records requested in this motion will contain information on his continued mental health functioning, which would be relevant to Mr. Nolen's claim of incompetency (Claim II).

## CONCLUSION

Mr. Nolen has established "good cause" for discovery on Claims I and II, where the "specific allegations before the court in the petition, show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). He respectfully requests that the above institutions be ordered to disclose records in their possession relating to Mr. Nolen.

Respectfully submitted,

/s/ Hunter S. Labovitz
Hunter S. Labovitz
Katherine Ensler
Assistant Federal Defenders
Federal Community Defender Office
    for the Eastern District of Pa.
Suite 545 West, The Curtis
601 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 928-0520
hunter_labovitz@fd.org
katherine_ensler@fd.org

Dated: January 27, 2023
    Philadelphia, PA

## CERTIFICATE OF SERVICE

I, Hunter Labovitz, hereby certify that on this 27th day of January, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the Court's electronic case filing system. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jennifer L. Crabb, Assistant Attorney General, Attorney for Respondents

Caroline E.J. Hunt, Assistant Attorney General, Attorney for Respondents

<u>/s/ Hunter Labovitz</u>
Hunter Labovitz