#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALTON NOLEN, | ) | |
| | ) | |
|         Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-22-272-R |
| | ) | |
| CHRISTE QUICK, Acting Warden, | ) | Judge David L. Russell |
| Oklahoma State Penitentiary, | ) | Magistrate Judge Gary M. Purcell |
| | ) | (Capital Case) |
|         Respondent. | ) | |

### PETITIONER'S REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY HEARING AND BRIEF IN SUPPORT

Petitioner Alton Nolen, through undersigned counsel, respectfully replies to Respondent's Response in Opposition to Motion for Evidentiary Hearing ("Response") (Doc. 52) without abandoning any arguments in his Motion for Evidentiary Hearing and Brief in Support ("Motion") (Doc. 51).

Respondent argues that under *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), "this Court cannot grant an evidentiary hearing on the merits of a claim or consider any evidence that was that was not presented in state court unless it first finds that the Oklahoma Court of Criminal Appeals's ('OCCA') decision" was unreasonable under 28 U.S.C. § 2254(d). Doc. 52 at 2. *See also id.* at 5, 9, 11, 16, 17, 18, 19. *Pinholster* poses no barrier here. Because OCCA's denials of relief on direct appeal and original post-conviction were based on unreasonable factual and legal determinations under § 2254(d), *see* Doc. 22 at 23-47, 74-77, 99-100, 104-13, review is de novo and *Pinholster* does not preclude the Court's consideration of additional evidence. *See, e.g., Harris v. Farris*, No. CIV-08-375-R, 2021

WL 165123, at *3-5 (W.D. Okla. Jan. 19, 2021) (unpublished). Alternatively, as detailed below, *see infra* at 6, to the extent OCCA denied relief on procedural grounds, such adjudications do not bar federal review of Mr. Nolen's claims; and because there is no merits adjudication, the Court should review these claims de novo and *Pinholster* does not apply. *See Eaton v. Pacheco*, 931 F.3d 1009, 1019 (10th Cir. 2019); Doc. 50 at 3-4.

## REPLY REGARDING GROUND ONE

Respondent claims Mr. Nolen "has raised several versions of his *Atkins* [*v. Virginia*, 536 U.S. 304 (2002)] claim" and argues he "is entitled to an evidentiary hearing on none of them." Doc. 52 at 4. But Mr. Nolen raised a single *Atkins* claim with two components: the first based on evidence presented in state court prior to trial and during post-conviction, and the second based on new evidence and updated diagnostic standards (which he has since presented in state court in a subsequent post-conviction application). *See* Doc. 49 at 2. Mr. Nolen is entitled to (1) relief based on the record of trial-level *Atkins* proceedings (as presented on direct appeal), or, in the alternative, (2) an evidentiary hearing on the subsequently presented evidence (first proffered on post-conviction and federal habeas) so the Court can consider that evidence in conjunction with the trial record.

Respondent argues that "an evidentiary hearing is unwarranted" because "review of a jury's intellectual disability verdict is limited to the record before the jury." Doc. 52 at 6 (citations omitted). But Mr. Nolen does not just challenge the jury's verdict; he also (1) challenges OCCA's failure to grant him an evidentiary hearing on newly available evidence first presented on post-conviction and (2) presents updated diagnostic standards and new evidence, which he has returned to OCCA to present. Because OCCA's denial of

2

a hearing in post-conviction was unreasonable and the new evidence remains pending before OCCA, the grant of an evidentiary hearing is appropriate. Moreover, if this Court were to limit Mr. Nolen's *Atkins* presentation to the standards and evidence existing at the time of his trial, no matter how out-of-date the standards might be or what new evidence of his intellectual disability ("ID") might exist, that would violate *Moore v. Texas*, 581 U.S. 1, 6 (2017) ("*Moore I*"), which prohibits any procedural scheme that would "'creat[e] an unacceptable risk that persons with intellectual disability will be executed.'"

     A.     **Diligence**

Contrary to Respondent's claims, *see* Doc. 52 at 5, 7-8, 10, Mr. Nolen was diligent in developing the facts of his *Atkins* claim in state court, *see* Doc. 51 at 2-4. First, Respondent complains that Mr. Nolen did not request an evidentiary hearing on his *Atkins* claim on direct appeal. Doc. 52 at 5. But Mr. Nolen had an evidentiary hearing on his *Atkins* claim prior to trial, and he did not obtain new evidence requiring an additional evidentiary hearing until original post-conviction, when he diligently sought a hearing.

Next, with respect to original post-conviction, Respondent argues Mr. Nolen could not "'reasonably have believed his request for an evidentiary hearing in state court met the requirements for such a hearing under then-existing state law'" because "[u]nder Oklahoma law, the OCCA will not remand a post-conviction application for an evidentiary hearing where it finds . . . 'that the claims were or could have been previously raised'"; Respondent argues this claim "was simply a regurgitation of a claim already litigated on direct appeal with an IQ score that could previously have been presented." Doc. 52 at 7 (citations omitted). But Mr. Nolen's evidentiary hearing request could not have previously been

3

presented, as he proffered new, previously unavailable testing results by the Department of Corrections ("DOC") that established his intellectual disability. *See* Doc. 22 at 42-45. OCCA adjudicated the merits of the claim and failed to grant a hearing and relief because of an unreasonable fact finding. *See* Doc. 22 at 42-45; Doc. 49 at 8-9.

Respondent's suggestion that Mr. Nolen was not diligent because he "fail[ed] to present another IQ score to the OCCA until post-conviction review" is incorrect. Doc. 52 at 7. There is no reason diligent counsel would have sought a second IQ score as Mr. Nolen already had an IQ score in the ID range; and *Nolen I* and *II* found Mr. Nolen to have an ID-range IQ. *See* Doc. 22 at 43-44; Doc. 49 at 16. Even assuming Mr. Nolen's ID-range IQ was in dispute, much of the significance of the new ID-range score is that the testing was performed by the DOC as opposed to an expert retained by the defense. Mr. Nolen had no control over whether and when the DOC would test him. Finally, Respondent ignores that the new post-conviction evidence included not just an IQ score but also neuropsychological testing, which, when considered with the evidence presented in trial proceedings, establishes the rest of the diagnosis. *See* Doc. 22 at 42-43, 45.

Respondent argues that because "pretrial, beginning in 2016, Petitioner refused to cooperate with evaluation efforts by both defense and State experts," in particular Dr. Daniel Reschly and Dr. Jarrod Steffan, he cannot "claim years later that he was not able to earlier present another IQ score." Doc. 52 at 7-8. But Dr. Reschly did not seek to perform IQ testing, only achievement testing, when Mr. Nolen discontinued the evaluation. *See* Att. 19 at 12, 14. Respondent also ignores that Mr. Nolen cooperated in pretrial evaluations with multiple experts, including court-appointed psychologists Drs. Shawn Roberson and

4

Scott Orth, 8/12/2016 Tr. 195, 218, Comp.-2 Tr. 76-77, 82. Any failure to cooperate with certain evaluations stemmed from impairments that formed part of Mr. Nolen's ID-related deficits and rendered him incompetent. *See* Doc. 22 at 57-79. Denying review of his *Atkins* claim due to impairments that help form the basis for his diagnosis would violate *Moore I*. *See supra* at 3.

Finally, regarding Mr. Nolen's proffer of new evidence of adaptive deficits and updated diagnostic standards on subsequent post-conviction, *see* Doc. 22 at 47-54, Respondent argues Mr. Nolen could not "'reasonably . . . believe[] his request for an evidentiary hearing' meets the requirements for same in state court" because he "has not presented a claim or evidence that was not or could not have been previously raised." Doc. 52 at 10 (citations omitted). Respondent errs. OCCA may grant relief when, as here, "an error complained of has resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." *Valdez v. Oklahoma*, 46 P.3d 703, 710-11 (Okla. Crim. App. 2002) (citing Okla. Stat. tit. 20, § 3001.1). Alternatively, the additional evidence and new diagnostic standards are reviewable because they "could not have been presented previously in a timely original application," Okla. Stat. tit. 22, § 1089(D)(8)(b)(1), due to the ineffective assistance of post-conviction counsel. *See* Opinion Denying Second Application for Post-Conviction Relief and Related Motions for Discovery and Evidentiary Hearing at 13*, Tryon v. Oklahoma*, No. PCD-2020-231 (Okla. Crim. App. Mar. 11, 2021) (unpublished) (recognizing right in state court to effective assistance of post-conviction counsel). Because Mr. Nolen is entitled to merits review under either of those two theories, Respondent's argument fails.

### B. The Portion of the Claim OCCA Has Already Adjudicated

The portion of the claim that is based on the trial record is not, as Respondent argues, "so utterly transformed from state court as to be unexhausted," and Mr. Nolen has not forfeited the claim, *see* Doc. 49 at 2-6; Doc. 52 at 4-5. Respondent's argument that Mr. Nolen "has not raised the direct appeal version of his intellectual disability claim before this Court; as such, it is forfeited" is not supported by *Hancock v. Trammell*, 798 F.3d 1002 (10th Cir. 2015), and Respondent provides no other cases to support this argument. Doc. 52 at 4-5. The forfeiture doctrine is relevant not to whether a federal habeas claim is exhausted in state court but instead to whether a claim presented *on appeal* was presented *below* (as was at issue in *Hancock*). *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). To have his claim reviewed by this Court, Mr. Nolen need only have exhausted the claim by fairly presenting it to the state court, as he did. *See* Doc. 49 at 2-6.

Regarding the claim as raised on original post-conviction, Respondent claims, "Petitioner is not entitled to an evidentiary hearing on the merits of a procedurally barred claim." Doc. 52 at 7 (citation omitted). *See also id.* at 8 n.4. But Mr. Nolen's *Atkins* claim as raised on post-conviction was adjudicated on the merits. *See* Doc. 49 at 7-15. Even if OCCA procedurally barred the claim, this Court should not find procedural default because the bar was not independent and adequate, and Mr. Nolen can demonstrate cause, prejudice, and miscarriage of justice. *Id.* If the Court finds no default, review is de novo and *Pinholster* does not apply. *See supra* at 2. Even assuming this Court finds this portion of the claim defaulted, it can consider the evidence if Mr. Nolen overcomes § 2254(d) in another aspect of the claim. *See supra* at 1-2.

Respondent argues that Mr. Nolen "cannot overcome § 2254(d) based on the IQ score he presented on post-conviction" because Dr. Susan Shields—the DOC psychologist who tested Mr. Nolen—did not consider the IQ to be reliable. Doc. 52 at 9. Respondent ignores that *Nolen I* and *II* found that Mr. Nolen's first IQ score was sufficient for a diagnosis of ID, and that his neuropsychological battery administered by the DOC established the rest of the diagnosis when considered with the rest of the evidence in this case. *See* Doc. 22 at 43-45; Doc. 49 at 16. Respondent also misstates Dr. Shields's conclusions as she found all of her testing—including the IQ score—to be reliable; in making these arguments, Respondent advances a position that is contrary to diagnostic standards and *Moore I*. *See* Doc 49 at 29-30. In any event, as Mr. Nolen's averments—if true—would entitle him to relief, any dispute over the diagnostic significance of Dr. Shields's IQ testing must be settled in an evidentiary hearing. *See* Doc. 50 at 2.

C.     **The Portion of the Claim Pending Before OCCA**

Regarding the claim as raised on subsequent post-conviction, Respondent argues that OCCA will procedurally bar this claim and *Pinholster* will preclude review of the new evidence presented therein. Doc. 52 at 9-11. But OCCA has not ruled and there are two separate procedural vehicles through which this new evidence could be considered on the merits. *See supra* at 5. Even if OCCA procedurally bars this portion of the claim, it will not be subject to a finding of procedural default by this Court because any bar will not be independent and adequate and Mr. Nolen can demonstrate cause, prejudice, and miscarriage of justice. *See* Doc. 49 at 25-30. Because OCCA may issue a merits adjudication regarding this new evidence or a procedural ruling that would not bar federal

7

merits review, neither *Pinholster* nor a procedural bar will pose a barrier to merits review. *See supra* at 1-2.

Even if this Court ultimately finds this portion of the claim procedurally defaulted, if OCCA's adjudication of *Nolen I* or *II* was unreasonable, this Court can consider supporting evidence regardless of its presentation in state court. *See supra* at 1-2. As Respondent concedes, in *Harris*, 2021 WL 165123, at *2-5, the Court agreed to consider evidence that had not been presented in state court on de novo review "after the Tenth Circuit had pierced § 2254(d) deference." Doc. 52 at 12-13 (citations omitted). That is what Mr. Nolen argues should happen here. *See supra* at 1-2.

Respondent argues Mr. Nolen's suggestion that the Court can consider new evidence in support of his *Atkins* claim "because the claim has allegedly not been 'fundamentally altered,' is utterly without merit, as he relies on cases that are no longer good law following *Pinholster* or that involve claims being reviewed *de novo*." Doc. 52 at 12 (citations omitted). But Mr. Nolen does not cite these cases for the proposition that the Court can consider new evidence in support of Mr. Nolen's § 2254(d) arguments; he cites them to argue that the *Atkins* claim is *exhausted* because it has not been fundamentally altered and so, if the Court finds he overcomes § 2254(d), the Court can consider the new evidence. *See* Doc. 49 at 2-6, 25; Doc. 51 at 5-6. *Pinholster* had no impact on this argument, as evidenced by this Court's recent citations to the cases upon which Mr. Nolen relies. *See Harris*, 2021 WL 165123, at *4-5 (citing *Vasquez v. Hillery*, 474 U.S. 254 (1986); *Winston v. Kelly*, 592 F.3f 535, 548, 550 (4th Cir 2010)). These cases remain good law on this issue.

Regarding the updated diagnostic standards, Respondent argues that Mr. Nolen "is not entitled to an evidentiary hearing and merits review of his *Atkins* claim every time" the diagnostic standards are updated. Doc. 52 at 10. She cites a footnote in *In re Richardson*, 802 F. App'x 750, 759 n.5 (4th Cir. 2020) (unpublished), for this proposition. Respondent's argument is meritless. *Moore I* ruled that current diagnostic standards are binding and contained no language to limit the definition of "current" to the standards in place at the time of trial or direct appeal. 581 U.S. at 15-20. In fact, *Moore I*, which was issued in 2017, did not apply diagnostic standards that were in place at the time of Mr. Moore's 2001 penalty phase or 2004 direct appeal opinion but instead applied the diagnostic standards that were in place at the time of the Supreme Court's review. *Id.* at 20. *Richardson* is an out-of-circuit and unreported opinion with no precedential value; it does not undermine binding Supreme Court precedent on this issue.

### D.  Innocence of the Death Penalty

Respondent argues that "§ 2254(e)(2)(B) applies only where the petitioner shows innocence of the 'underlying offense,'" not innocence of the death penalty, Doc. 52 at 5-6, *see also* Doc. 52 at 8, 11 (citations omitted), and that Congress intended this, *see* Doc. 6 n.3. On the contrary, Congress did not make a "conscious decision" to bar evidentiary hearings for petitioners who can show that they are ineligible for the death penalty due to categorical exemptions, *id.*, as *Atkins* and *Roper* had not yet been decided when § 2254(e)(2)(B) was enacted in 1996. *See Atkins*, 536 U.S. at 321; *Roper v. Simmons*, 543 U.S. 551, 578 (2005). Refusing a hearing where a petitioner is innocent of the death penalty due to ID, but was not diligent in developing the facts of his *Atkins* claim in state court,

9

would violate *Atkins* and *Moore I*. *See* Doc. 51 at 8. And Respondent does not provide any controlling precedent for its position.[1] Respondent's argument should be rejected as contrary to *Moore I* and *Atkins*.

Respondent claims "that Petitioner has not demonstrated actual innocence of the death penalty." Doc. 52 at 6 (citing Doc. 38 at 57-65). *See also id.* at 8, 11. As demonstrated in Mr. Nolen's habeas petition and reply, he can establish by clear and convincing evidence that he is constitutionally ineligible for the death penalty. *See* Doc. 22 at 7-23, 47-54; Doc. 49 at 29-30.

### E.     Procedural Defense Responses

To the extent Mr. Nolen's argument for why he seeks a hearing on Respondent's procedural defenses is unclear, *see* Doc. 52 at 13, Doc. 51 at 7, he seeks a hearing to show (1) the timing and content of the new IQ and neuropsychological testing results presented in original post-conviction, and of the new diagnostic standards, in order to show cause for any procedural default, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); (2) the basis for his ID diagnosis when those two new developments are considered in conjunction with the pre-existing record to demonstrate the "prejudice as a result of the violation of federal law," *id.*; and (3) the basis for his ID diagnosis based on new diagnostic standards and all the available evidence in order to show a miscarriage of justice, *see id*.

---

[1] Respondent cites *Thompson v. Davis*, 916 F.3d 444 (5th Cir. 2019). *Thompson* is neither controlling nor on point. There, the petitioner sought a hearing on alleged penalty-phase violations of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Massiah v. United States*, 377 U.S. 201 (1964). 916 F.3d at 457-58. He made no allegation he was ineligible for the death penalty under the *Sawyer v. Whitley*, 505 U.S. 333 (1992), standard, as Mr. Nolen argues.

Respectfully submitted,

/s/ Hunter S. Labovitz
Hunter S. Labovitz
Katherine Ensler
Assistant Federal Defenders
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: (215) 928-0520
hunter_labovitz@fd.org
katherine_ensler@fd.org

*Counsel for Petitioner Alton Nolen*

**CERTIFICATE OF SERVICE**

I, Hunter Labovitz, hereby certify that on this 26th day of September, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the Court's electronic case filing system. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jennifer L. Crabb, Assistant Attorney General, Attorney for Respondents

Caroline E.J. Hunt, Assistant Attorney General, Attorney for Respondents

/s/ Hunter Labovitz
Hunter Labovitz