## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

_____

|  |  |  |
|---|---|---|
| | : | |
| ALTON NOLEN, | : | |
| | : | |
| Petitioner, | : | |
| | : | Case No. CIV-22-272-R |
| v. | : | |
| | : | Judge David L. Russell |
| CHRISTE QUICK, Warden, | : | (Capital Case) |
| Oklahoma State Penitentiary, | : | |
| | : | |
| Respondent. | : | |

_____

## PETITIONER'S SUPPLEMENTAL BRIEF
## FOLLOWING STATE COURT DECISION

Meghan LeFrancois
Katherine Ensler
Assistant Federal Defenders
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: (215) 928-0520
Meghan_LeFrancois@fd.org
Katherine_Ensler@fd.org

Hunter Labovitz
Assistant Federal Public Defender
Western District of Oklahoma
Capital Habeas Unit
215 Dean A. McGee, Suite 707
Oklahoma City, OK 73102
Telephone: (405) 609-5975
Fax: (405) 609-5976
Hunter_Labovitz@fd.org

*Counsel for Petitioner Alton Nolen*

April 11, 2025

# Table of Contents

Table of Authorities................................................................................................ii

Table of Attachments............................................................................................ v

I.    Introduction ................................................................................................ 1

II.   Mr. Nolen's *Atkins* Claim Was Exhausted Before His Return to State Court. This
      Court Can Consider the New Evidence and Standards. ............................................ 2

III.  Alternatively, the Second Component of the *Atkins* Claim Is Now Exhausted. It
      Must Be Reviewed De Novo............................................................................... 5

      A.    The Procedural Bars Applied by OCCA Do Not Preclude Federal
            Review of the Second Component of the *Atkins* Claim................................... 5

            1.    The Procedural Bars Are Not Adequate to Preclude Federal Review..... 7

            2.    The State Procedural Bars Are Not Independent................................. 19

            3.    Mr. Nolen Can Show Cause and Prejudice. ......................................... 23

            4.    Denying Mr. Nolen Full Review of His *Atkins* Claim Would
                  Result in a Miscarriage of Justice. ........................................... 24

      B.    This Court Should Review the Second Component of the Claim
            De Novo. ................................................................................... 24

IV.   Conclusion ................................................................................................ 25

## Table of Authorities

**Federal Cases**

*Ake v. Oklahoma*, 470 U.S. 68 (1985) .............................................................. 20

*Anderson v. Sirmons*, 476 F.3d 1131 (10th Cir. 2007) ................................. 8, 12

*Atkins v. Virginia*, 536 U.S. 304 (2002) ..................................................... *passim*

*Banks v. Workman*, 692 F.3d 1133 (10th Cir. 2012) ........................................ 22

*Beard v. Kindler*, 558 U.S. 53 (2009) .......................................................... 7, 14

*Black v. Workman*, 682 F.3d 880 (10th Cir. 2012) ...................................... 14, 20

*Brecheen v. Reynolds*, 41 F.3d 1343 (10th Cir. 1994) ................................... 8, 12

*Coleman v. Thompson*, 501 U.S. 722 (1991) ................................................. 6, 24

*Cruz v. Arizona*, 598 U.S. 17 (2023) ........................................ 5, 7, 8, 13, 19

*Cullen v. Pinholster*, 563 U.S. 170 (2011) .............................................. 3, 4, 5

*Demarest v. Price*, 130 F.3d 922 (10th Cir. 1997) ........................................... 3

*Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009) ..................................... 9

*Eaton v. Pacheco*, 931 F.3d 1009 (10th Cir. 2019) ...................................... 4, 25

*Fairchild v. Trammell*, 784 F.3d 702 (10th Cir. 2015) .................................... 23

*Fairchild v. Workman*, 579 F.3d 1134 (10th Cir. 2009) ................................. 2, 7

*Glossip v. Oklahoma*, 145 S. Ct. 612 (2025) ............................................. *passim*

*Gutierrez v. Moriarty*, 922 F.2d 1464 (10th Cir. 1991) ................................ 14, 5

*Hall v. Florida*, 572 U.S. 701 (2014) ........................................................... 11

*Harris v. Farris*, No. CIV-08-375-R, 2021 WL 165123 (W.D. Okla. Jan. 19, 2021) ...... 4

*Hawkins v. Mullin*, 291 F.3d 658 (10th Cir. 2002) ........................................... 3

*Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999) ............................................. 7

*Jones v. Workman*, 98 F. Supp. 3d 1179 (W.D. Okla. 2015) ............................. 3

*Kerchee v. Jones*, 428 F. App'x 851 (10th Cir. 2011) ...................................... 3

*LaFevers v. Gibson*, No. CIV-97-281-L, slip op. (W.D. Okla. Oct. 30, 2000) ............... 9

*Lee v. Kemna*, 534 U.S. 362, 375 (2002) ................................................. *passim*

*Michael Smith v. Trammell*, No. CIV-09-293-D, 2014 WL 4627225 (W.D. Okla. Sept. 16, 2014) ................................................................................ 10

*Milton v. Miller*, 744 F.3d 660 (10th Cir. 2014) .............................................. 5

*Moore v. Texas*, 581 U.S. 1 (2017) ........................................................... *passim*

*Murray v. Carrier*, 477 U.S. 478 (1986) ................................................... 23, 24

*Napue v. Illinois*, 360 U.S. 264 (1959) ............................................................. 20

*Pavatt v. Carpenter*, 928 F.3d 906 (10th Cir. 2019) ...................................... 14

*Powell v. Mullin*, No. CIV-00-1859-C, 2006 WL 249632 (W.D. Okla. Jan. 31, 2006) ...................................................................................................................... 9

*Prendergast v. Clements*, 699 F.3d 1182 (10th Cir. 2012) ............................... 2

*Sawyer v. Whitley*, 505 U.S. 333 (1992) ................................................... 19, 24

*Smith v. Aldridge*, 904 F.3d 874 (10th Cir. 2018) ........................................... 4

*Spears v. Mullin*, 343 F.3d 1215 (10th Cir. 2003) ..................................... 8, 11

*Thacker v. Workman*, 678 F.3d 820 (10th Cir. 2012) ..................................... 14

*Vasquez v. Hillery*, 474 U.S. 254 (1986) .......................................................... 3

*Wainwright v. Sykes*, 433 U.S. 72 (1977) ................................................. 23, 24

*Walker v. Martin*, 562 U.S. 307 (2011) ..................................................... 14, 15

*Young v. Ragen*, 337 U.S. 235 (1949) .............................................................. 8

## Federal Statutes

28 U.S.C. § 2254(d) ................................................................................. *passim*

## State Cases

*Glossip v. State*, 529 P.3d 218 (Okla. Crim. App. 2023) ............................... 19

*Howell v. State*, 138 P.3d 549 (Okla. Crim. App. 2006) ............................... 10

*Lambert v. State*, 126 P.3d 646 (Okla. Crim. App. 2005) ............................. 10

*Malicoat v. State*, 137 P.3d 1234 (Okla. Crim. App. 2006) .......................... 18

*Michael Smith v. State*, 245 P.3d 1233 (Okla. Crim. App. 2010) ................. 10

*Murphy v. State*, 54 P.3d 556 (Okla. Crim. App. 2002) ................................ 10

*Myers v. State*, 130 P.3d 262 (Okla. Crim. App. 2005) ................................ 10

*Nolen v. State*, 485 P.3d 829 (Okla. Crim. App. 2021) ........................... 16, 17

*Ochoa v. State*, 136 P.3d 661 (Okla. Crim. App. 2006) ................................ 10

*Salazar v. State*, 126 P.3d 625 (Okla. Crim. App. 2005) .............................. 10

*Slaughter v. State*, 108 P.3d 1052 (Okla. Crim. App. 2005) ......................... 18

*Valdez v. State*, 46 P.3d 703 (Okla. Crim. App. 2002) ........................... *passim*

## State Statutes

Okla. Stat. tit. 21, § 701.10b .......................................................................... 10

Okla. Stat. tit. 22, § 1089 ......................................................................... *passim*

**Rules of the Oklahoma Court of Criminal Appeals**

Rule 3.4(F)(1), *Rules of the Oklahoma Court of Criminal Appeals*, Okla. Stat. tit. 22, Ch. 18, App. ................................................................................................................... 12

Rule 9.7, *Rules of the Oklahoma Court of Criminal Appeals*, Okla. Stat. tit. 22, Ch. 18, App. .................................................................................................................. *passim*

**Table of Attachments**

| Attachment No. | Document |
|---|---|
| Attachment 1 | *Nolen v. State*, slip op., No. PCD-2023-472 (Okla. Crim. App. Dec. 5, 2024) |
| Attachment 2 | Subsequent Application for Post-Conviction Relief, *Nolen v. State*, No. PCD-2023-472 (Okla. Crim. App. May 26, 2023) |
| Attachment 3 | *Douglas v. Mullin*, slip op., No. CIV-02-101-C (W.D. Okla. Oct. 4, 2004) |
| Attachment 4 | *LaFevers v. Gibson*, slip op., No. CIV-92-281-L (W.D. Okla. Oct. 30, 2000) |
| Attachment 5 | *Powell v. State*, slip op., No. PCD-2003-89 (Okla. Crim. App. June 11, 2003) |
| Attachment 6 | *Brown v. State*, slip op., No. PCD-2002-781 (Okla. Crim. App. Aug. 22, 2002) |

**PETITIONER'S SUPPLEMENTAL BRIEF FOLLOWING STATE COURT DECISION**

## I.    Introduction

Mr. Nolen's habeas petition argues, in Claim One, that he is a person with intellectual disability and thus ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). The claim includes two components: (1) that Mr. Nolen is entitled to *Atkins* relief based on the evidence presented on direct appeal and original post-conviction, *see* Doc. 22 at 5-47, and (2) that new evidence and current diagnostic standards confirm his intellectual disability, *see id.* at 47-57. After receiving permission to return to state court to exhaust the arguably unexhausted second component, *see* Docs. 30, 31, on May 31, 2023, Mr. Nolen filed a successive application for post-conviction relief ("SAPCR") in the Oklahoma Court of Criminal Appeals ("OCCA"), *see* Att. 2. On December 5, 2024, OCCA denied Mr. Nolen's SAPCR and accompanying motions.[1] *See Nolen v. State*, slip op., No. PCD-2023-472 (Okla. Crim. App. Dec. 5, 2024) ("*Nolen III*") (Att. 1).

OCCA declined to review the merits of Mr. Nolen's SAPCR, instead barring it (1) under Okla. Stat. tit. 22, § 1089(D)(8) because he had not shown the new evidence of Mr. Nolen's adaptive deficits was previously unavailable and could not have been presented on original post-conviction, and (2) under OCCA Rule 9.7(G) because the claim was not filed within sixty days of the issuance of the new diagnostic standards.

---

[1] This Court granted Mr. Nolen's motion to file a supplemental brief following OCCA's decision and within forty-five days of the Supreme Court's resolution of *Glossip v. Oklahoma*, 145 S. Ct. 612 (2025), in which the Court had granted certiorari and ordered briefing on the adequacy and independence of Okla. Stat. tit. 22, § 1089(D)(8), a state procedural bar applied to Mr. Glossip's and Mr. Nolen's SAPCRs. *See* Docs. 58, 59. *Glossip* was issued on February 25, 2025.

OCCA's procedural findings barring the SAPCR do not prevent this Court's consideration of the new evidence and updated diagnostic standards that confirm Mr. Nolen's intellectual disability (presented in the second component of the habeas claim). *See* Doc. 22 at 47-57. As the new evidence and standards do not fundamentally alter Mr. Nolen's *Atkins* claim, the claim was exhausted on direct appeal and original post-conviction. Because OCCA's factual and legal determinations were unreasonable under 28 U.S.C. § 2254(d), this Court should review the claim de novo in its entirety. Alternatively, even assuming that exhaustion of the component of the claim based on new evidence and standards was necessary for this Court to rely on them, the Court should still consider the claim de novo in its entirety; exhaustion is complete with the litigation of Mr. Nolen's SAPCR, and the procedural bars applied by OCCA do not preclude federal review of the new evidence and standards.

## II.    Mr. Nolen's *Atkins* Claim Was Exhausted Before His Return to State Court. This Court Can Consider the New Evidence and Standards.

Mr. Nolen's *Atkins* claim was exhausted on direct appeal and original post-conviction. *See* Doc. 22 at 5-47. That is, even before his return to state court with the filing of his SAPCR, "the 'substance' of [his] claim ha[d] been] presented to [OCCA] in a manner sufficient to put [it] on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). The new evidence of adaptive deficits and updated standards did not render the *Atkins* claim unexhausted.

"[N]ot every new piece of evidence makes a claim a new one." *Fairchild v. Workman*, 579 F.3d 1134, 1148 (10th Cir. 2009) (citation and footnote omitted). *See*

*Vasquez v. Hillery*, 474 U.S. 254, 260 (1986) (habeas claim exhausted where "the supplemental evidence presented by respondent did not fundamentally alter the legal claim already considered by the state courts, and, therefore, did not require that respondent be remitted to state court for consideration of that evidence"). A petitioner need only exhaust where the new evidence "'places the claims in a significantly different legal posture.'" *Hawkins v. Mullin*, 291 F.3d 658, 670 (10th Cir. 2002) (citations omitted). *See Demarest v. Price*, 130 F.3d 922, 937 (10th Cir. 1997) (finding claim unexhausted where the new evidence did "not merely supplement evidence in the state court record," as it did in *Vasquez*, but was "more like a 180 degree turn"). The new evidence and standards do not place Mr. Nolen's claim in a significantly different legal posture, as Respondent effectively concedes in claiming the new evidence is cumulative and the updated standards do not strengthen his claim. *See* Doc. 38 at 60-65.

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"), does not diminish Mr. Nolen's exhaustion argument. *See Kerchee v. Jones*, 428 F. App'x 851, 862 (10th Cir. 2011) (post-*Pinholster* decision reaffirming *Fairchild*'s distinction of "new *claims* as opposed to merely new *evidence*"); *Jones v. Workman*, 98 F. Supp. 3d 1179, 1215 (W.D. Okla. 2015), *vacated and remanded sub nom. Jones v. Royal*, No. 15-6086, 2017 WL 4875552 (10th Cir. Mar. 30, 2017) (holding that habeas petitioner must make ineffective-assistance-of-counsel showing "on the basis of the evidence the OCCA had before it" under *Pinholster* but "agree[ing] with Petitioner that the additional evidence merely supports his already exhausted claim"). This Court's post-

*Pinholster* order in *Harris v. Farris*, No. CIV-08-375-R, 2021 WL 165123 (W.D. Okla. Jan. 19, 2021), rejected the State's argument that, in habeas proceedings on Harris's claim "that counsel performed ineffectively by failing to request an *Atkins* hearing," *id.* at *2 (citation omitted), the addition of a formal adaptive assessment by a new expert "risk[ed] rendering the claim unexhausted," *id.* at *3. The Court rejected the State's argument because – like Mr. Nolen – (1) Harris "argued all along" that his adaptive-functioning deficits met Oklahoma's test for intellectual disability and did not "make only general allegations . . . that he now seeks to alter by pursuing a more specific claim," and (2) Harris's "state court claim identified specific areas of adaptive deficits, cited to supporting evidence, and sought to further develop the evidence by requesting an evidentiary hearing."[2] *Id.* at *5.

Pinholster does not preclude the Court's review of the new evidence and standards. As detailed in Mr. Nolen's habeas petition, OCCA's *Atkins* determinations on direct appeal and original post-conviction were unreasonable under 28 U.S.C. § 2254(d)(1) and (d)(2). *See* Doc. 22 at 23-47. Thus, he is entitled to de novo review of the *Atkins* claim, and this Court can consider all evidence proffered in support of the claim. *See Smith v. Aldridge*, 904 F.3d 874, 887 (10th Cir. 2018) (de novo review where court "first determine[s] that § 2254(d)'s limitation on relief is lifted"); *Eaton v. Pacheco*, 931 F.3d 1009, 1019 (10th Cir. 2019) (citations omitted) ("*Pinholster*'s bar on new evidence is coterminous with the scope of § 2254(d)," so where state court does not adjudicate merits, "§ 2254(d) deference

---

[2] The Court noted that, as here, "further development of the facts supporting Petitioner's claim was stifled by the state court's denial of an evidentiary hearing." *Id.* at *5 n.7.

doesn't apply; review is de novo; and *Pinholster* doesn't preclude" reliance on evidence first presented on federal habeas); *Milton v. Miller*, 744 F.3d 660, 673 (10th Cir. 2014) (remanding for evidentiary hearing after concluding that state court's "decision cannot survive scrutiny under § 2254(d)(1)") (quoting *Pinholster*, 563 U.S. at 205 (Breyer, J., concurring in part and dissenting in part) ("If the federal habeas court finds that the state-court decision fails (d)'s test (or if (d) does not apply), then an (e) hearing may be needed.")).

### III.    Alternatively, the Second Component of the *Atkins* Claim Is Now Exhausted. It Must Be Reviewed De Novo.

Even assuming the new evidence and standards proffered in support of Mr. Nolen's *Atkins* claim rendered that component of the claim unexhausted when it was filed, he has now returned to state court and exhausted it. All arguments and evidence have been fairly presented to OCCA, and exhaustion is not a barrier to this Court's review. The procedural bars applied by OCCA do not preclude this Court's review, and because OCCA did not adjudicate the merits, this Court's review is de novo.

### A.    The Procedural Bars Applied by OCCA Do Not Preclude Federal Review of the Second Component of the *Atkins* Claim.

When a state court denies relief, a federal court is only barred from considering a federal question if "'the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Glossip*, 145 S. Ct. at 624 (quoting *Cruz v. Arizona*, 598 U.S. 17, 25 (2023)). Furthermore, a petitioner can overcome procedural default of his federal claims pursuant to an independent and adequate state ground if he "can demonstrate cause for the default and actual prejudice as

a result of the violation of federal law, or . . . that failure to review the claim will result in

a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

OCCA barred Mr. Nolen's SAPCR claim on two grounds. With respect to the new

adaptive-functioning evidence, OCCA applied Okla. Stat. tit. 22, § 1089(D)(8):[3]

> Nolen has not shown that the "new evidence" cited in support of this
> proposition was previously unavailable or unascertainable through the
> exercise of reasonable diligence on or before the date of his original
> application for post-conviction relief. Accordingly, the claim before this
> Court is not one which was not and could not have been presented in a
> previous application because the factual or legal basis for the claim was
> unavailable.

*Nolen III* at 6. With respect to the updated diagnostic standards, OCCA found that "this

issue . . . is waived as it was not filed 'within sixty (60) days from the date the previously

unavailable legal or factual basis serving as the basis for a new issue is announced or

---

[3] Under § 1089(D)(8), "[OCCA] may not consider the merits of or grant relief based on . . .
a subsequent [post-conviction] application, unless:"

    a. the application contains claims and issues that have not been and could not
       have been presented previously in a timely original application or in a
       previously considered application filed under this section, because the legal
       basis for the claim was unavailable, or

    b. (1) the application contains sufficient specific facts establishing that the
       current claims and issues have not and could not have been presented
       previously in a timely original application or in a previously considered
       application filed under this section, because the factual basis for the claim
       was unavailable as it was not ascertainable through the exercise of reasonable
       diligence on or before that date, and
       (2) the facts underlying the claim, if proven and viewed in light of the
       evidence as a whole, would be sufficient to establish by clear and convincing
       evidence that, but for the alleged error, no reasonable fact finder would have
       found the applicant guilty of the underlying offense or would have rendered
       the penalty of death.

discovered.'" *Id.* at 7 (quoting Rule 9.7(G), *Rules of the Oklahoma Court of Criminal Appeals*, Okla. Stat. tit. 22, Ch. 18, App. (2024)).[4]

Neither bar constitutes an impediment to this Court's review of the new evidence and standards. The grounds for OCCA's ruling are not adequate to foreclose federal review and independent of federal law. Even if they are determined to be adequate and independent, Mr. Nolen can show cause for default and prejudice as a result of the federal law violation. Finally, he can show the failure to review this component of his claim will result in a fundamental miscarriage of justice. De novo review is warranted.

### 1. The Procedural Bars Are Not Adequate to Preclude Federal Review.

"[W]hether a state procedural ruling is adequate is itself a question of federal law." *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). "Ordinarily, violation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim" *Lee*, 534 U.S. at 376 (citation omitted). But "[t]here are . . . exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Id.* (citations omitted). When "a state-court judgment rests on a novel and unforeseeable state-court procedural decision lacking fair or substantial support in prior state law, that decision is not adequate to preclude review of a federal question." *Cruz*, 598 U.S. at 32. A state

---

[4] Respondent has not asserted this ground for procedural default, but Mr. Nolen addresses it below in an abundance of caution. *See Fairchild*, 579 F.3d at 1141 n.2 (citation omitted) ("[P]rocedural default is an affirmative defense that must be raised by the state."); *Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999) ("Once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden to place that defense in issue shifts to the petitioner.").

procedural bar is also inadequate if "it deprives [a petitioner] of any meaningful review" of his claims. *Brecheen v. Reynolds*, 41 F.3d 1343, 1364 (10th Cir. 1994); *Spears v. Mullin*, 343 F.3d 1215, 1253-54 (10th Cir. 2003) (citation omitted). This standard is met "if the ground [for relief] could not have been raised within a state's procedural rules." *Anderson v. Sirmons*, 476 F.3d 1131, 1141 n.9 (10th Cir. 2007); *see also Young v. Ragen*, 337 U.S. 235, 236-40 (1949) ("[I]t is not simply a question of state procedure when a state court of last resort closes the door to any consideration of a claim of denial of a federal right.").

### a. Rule 9.7(G) Is Inadequate.

The bar OCCA applied to the updated diagnostic standards – Rule 9.7(G), *Rules of the Oklahoma Court of Criminal Appeals*, Okla. Stat. tit. 22, Ch. 18, App. ("Rule 9.7(G)," "Rule 9.7," or "the 60-day rule") – requiring SAPCRs to be filed "within sixty (60) days from the date the previously unavailable legal or factual basis . . . for a new issue is announced or discovered" – is inadequate because it is not "firmly established and regularly followed," *Lee*, 534 U.S. at 376. Even if the Court finds Rule 9.7(G) "generally sound," *id.*, its application here "deprives [Mr. Nolen] of any meaningful review" of his claim, *Brecheen*, 41 F.3d at 1364, and was "exorbitant," *Lee*, 534 U.S. at 376, and "novel and unforeseeable," "lacking fair or substantial support in prior state law," *Cruz*, 598 U.S. at 32.

"Pivotal to [the adequacy] analysis 'is whether the [state] courts' actual application of the particular procedural default rule to all similar claims has been evenhanded in the vast majority of cases." *Spears*, 343 F.3d at 1254. This Court has previously "determined that the State's procedural bar [Rule 9.7(G)] was inadequate to prevent its review because

the bar had not been evenhandedly applied to similar claims." *Douglas v. Workman*, 560 F.3d 1156, 1172 (10th Cir. 2009) (citing *Douglas v. Mullin*, No. CIV-02-101-C, slip op. at 6 (W.D. Okla. Oct. 4, 2004) (Att. 3)). *See also Powell v. Mullin*, No. CIV-00-1859-C, 2006 WL 249632, at *1 (W.D. Okla. Jan. 31, 2006), *aff'd sub nom. Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009) ("After supplemental briefing by the parties on the adequacy of [Rule 9.7(G)], the Court entered its Order determining the state's procedural bar to be inadequate to bar review under these circumstances.");[5] *LaFevers v. Gibson*, No. CIV-97-281-L, slip op. at 20 (W.D. Okla. Oct. 30, 2000) (Att. 4) ("Based upon the arguments of the parties, the Court is unable to conclude that Rule 9.7 is applied evenhandedly in the vast majority of cases.").

The Court should determine the same here, as OCCA has not applied the bar evenhandedly to other *Atkins* claims. In several cases, OCCA did not apply Rule 9.7(G) to bar such claims filed more than sixty days after *Atkins* was announced, instead reviewing the claims and remanding for further proceedings. Even though these SAPCR claims became available when the Court decided *Atkins* in June 2002, OCCA issued an order allowing petitioners to file such claims within sixty days of its issuance of *Murphy v. State*, 54 P.3d 556 (Okla. Crim. App. 2002), *see infra* at 11 n.9, which applied *Atkins* and was decided over two months later, in September 2002. *See, e.g.*, *Salazar v. State*, 126 P.3d 625, 627 (Okla. Crim. App. 2005) (SAPCR filed over four months after *Atkins* decided); *Myers v. State*, 130 P.3d 262, 265 (Okla. Crim. App. 2005) (same); *Lambert v. State*, 126

---

[5] On appeal in *Douglas* and *Powell*, the State did not include "any argument that the district court erred in finding the state procedural bar inadequate." *Douglas*, 560 F.3d at 1172.

P.3d 646, 649 (Okla. Crim. App. 2005) (same); *Pickens v. State*, 126 P.3d 612, 614 (Okla. Crim. App. 2005) (almost four months). In several cases, OCCA reviewed *Atkins* claims filed not just more than sixty days after the issuance of *Atkins* but more than sixty days after the issuance of *Murphy*. *See, e.g.*, *Howell v. State*, 138 P.3d 549, 554 (Okla. Crim. App. 2006) (SAPCR filed over nine months after *Murphy* decided); *Hooks v. State*, 126 P.3d 636, 639 (Okla. Crim. App. 2005) (almost four months); *Ochoa v. State*, 136 P.3d 661, 664 (Okla. Crim. App. 2006) (almost three months).[6]

In *Powell v. State*, No. PCD-2003-89, slip op. at 3-4, 8 (Okla. Crim. App. June 11, 2003) (Att. 5), OCCA applied Rule 9.7(G) and denied the SAPCR, which included claims about false and suppressed evidence but did not include an *Atkins* claim.[7] The petitioner had pointed to "fifteen '*Atkins v. Virginia* claims'" in which OCCA "ha[d] excused the 60-day rule." *Powell*, No. PCD-2003-89, slip op. at 4. OCCA described the "extraordinary relief" it had allowed for *Atkins* claims:

> Here, of course, [the petitioner] is speaking about the execution of the mentally-retarded,[8] which has been recently prohibited by the United States Supreme Court as unconstitutional. We fail to see any connection between

---

[6] In *Michael Smith v. State*, 245 P.3d 1233, 1235-38 (Okla. Crim. App. 2010), OCCA barred an *Atkins* claim first raised on SAPCR, under § 1089(D) and Rule 9.7(G). There, the petitioner had IQ scores above Oklahoma's cutoff for intellectual disability claims under Okla. Stat. tit. 21, § 701.10b(c). *See id.* at 1238. Despite the procedural bars, this Court explained that through an ineffective-assistance-of-counsel lens, OCCA had concluded "that the underlying claim was without merit." *Michael Smith v. Trammell*, No. CIV-09-293-D, 2014 WL 4627225, at *13 (W.D. Okla. Sept. 16, 2014), *aff'd sub nom. Michael Smith v. Duckworth*, 824 F.3d 1233 (10th Cir. 2016)). This Court and the Tenth Circuit proceeded to the merits and denied relief. *See id.*; *Michael Smith*, 824 F.3d at 1242.
[7] As stated above, this Court subsequently found the bar inadequate to foreclose federal review of Powell's claims. *Powell*, 2006 WL 249632, at *1.
[8] Since *Atkins* was issued, the diagnosis of "mental retardation" has been renamed to "intellectual disability" in diagnostic manuals and throughout all federal statutes. *See, e.g.*, *Hall v. Florida*, 572 U.S. 701, 704 (2014).

the extraordinary relief we have allowed in those cases, upon a mandate from the highest court of the land and the application of the sixty-day rule in this case.[9]

*Powell*, No. PCD-2003-89, slip op. at 4.

Here, OCCA has the same "mandate from the highest court of the land" prohibiting "the execution" of the intellectually disabled. *Id.* To follow that mandate, courts must use current diagnostic standards. *See Moore v. Texas*, 581 U.S. 1, 20 (2017) ("*Moore I*") ("[t]he medical community's current standards supply one constraint on States' leeway" in adjudicating *Atkins* claims). Failing to do so "'creat[es] an unacceptable risk that persons with intellectual disability will be executed.'" *Moore I*, 581 U.S. at 6 (quoting *Hall v. Florida*, 572 U.S. 701, 704 (2014)). Since OCCA excused Rule 9.7(G) in other *Atkins* cases but did not do so here, the rule is not evenhandedly applied to similar claims, *see Spears*, 343 F.3d at 1254, and is thus not "firmly established and regularly followed,"[10] *Lee*, 534 U.S. at 376.

---

[9] OCCA claimed that "[c]ontrary to Petitioner's allegation that we somehow waived the 60-day rule in those cases with an *Atkins/Murphy* issue, this Court merely entered an order establishing when the 60-day rule would commence running, based upon this Court's decision in *Murphy* [], adapting and applying the *Atkins* decision." *Powell*, No. PCD-2003-89, slip op. at 5. As described above, OCCA did decline to apply the rule when it allowed the 60-day clock to start upon the issuance of *Murphy*, not *Atkins* – and it further declined to apply the rule by allowing *Atkins* claims to be raised in SAPCRs more than sixty days after the issuance of *Murphy*.

[10] OCCA has also declined to apply Rule 9.7(G) in non-*Atkins* contexts. In *Brown v. State*, No. PCD-2002-781, slip op. at 2 (Okla. Crim. App. Aug. 22, 2002) (Att. 6), OCCA remanded for an evidentiary hearing on issues of newly discovered evidence and ineffective assistance of counsel despite that, according to Presiding Judge Lumpkin, "the claims raised . . . could have been raised on direct appeal or in the first post-conviction application," *id.* at 1 (Lumpkin, P.J, dissenting) (citing Rule 9.7). In *Douglas*, No. CIV-02-101-C, slip op. at 4-6, this Court's inadequacy finding relied, in part, on OCCA's failure to apply the rule in *Spears v. State*, No. PCD-99-1099 (Okla. Crim. App. 1999), where the federal district court had ordered exhaustion of habeas claims not previously raised.

Even if the Court finds Rule 9.7(G) "generally sound," *Lee*, 534 U.S. at 376, its application here "deprives [Mr. Nolen] of any meaningful review" of his claim, *Brecheen*, 41 F.3d at 1364. As OCCA acknowledged, *Nolen III* at 8 n.2, the updated standards were issued approximately five months after counsel filed Mr. Nolen's original post-conviction application. Oklahoma's rules provided no mechanism for post-conviction counsel to present the updated standards.[11] Under Okla. Stat. tit. 22, § 1089(D)(2), and Rule 9.7(B)(3), "[n]o application may be amended or supplemented after the time specified" in § 1089(D) (i.e., within ninety days from the filing of the direct-appeal response or reply).[12] OCCA's rules do not address the procedure for filing a reply in capital post-conviction proceedings in cases where, as here, OCCA orders the State to respond. However, OCCA's rule for direct appeals specifies that "[t]he reply brief shall only respond to the appellee's brief in chief," Rule 3.4(F)(1), *Rules of the Oklahoma Court of Criminal Appeals*, Okla. Stat. tit. 22, Ch. 18, App.; the presentation of updated diagnostic standards would have been beyond the scope of the reply. Because "the ground could not have been raised within [Oklahoma's] procedural rules," *Anderson*, 476 F.3d at 1141 n.9, the state bar is inadequate.

---

[11] In his SAPCR, Mr. Nolen argued post-conviction counsel should have tried to present the updated standards and was ineffective for failing to do so. *See* Att. 2 at 40-42. But even if prior counsel had made such an attempt, there is no apparent method under OCCA's rules by which OCCA would have allowed her to present the standards.

[12] On original post-conviction, OCCA denied Mr. Nolen's "motion purporting to reserve a right to supplement his timely filed original application for post-conviction relief," explaining that "[a]ny untimely attempt to supplement an existing post-conviction application is treated as a second or subsequent application." *Nolen II* at 2 n. 1.

Finally, even if the Court finds that Rule 9.7(G) is firmly established and regularly followed, and that the ground could have been raised within Oklahoma's procedural rules, a state procedural rule cannot bar merits review if its application in a particular case was "exorbitant," *Lee*, 534 U.S. at 376, and "novel and unforeseeable," "lacking fair or substantial support in prior state law," *Cruz*, 598 U.S. at 32. Given OCCA's treatment of other *Atkins* cases and given the lack of a clear mechanism to present the updated diagnostic standards in compliance with the rule, *see supra* at 9-12, that threshold is met.

### b. The *Valdez* Exception Renders Rule. 9.7(G) and § 1089(D) Inadequate.

The bars applied by OCCA – Rule 9.7(G) and § 1089(D) – are inadequate to foreclose federal review for another reason. In barring Mr. Nolen's claim, OCCA acknowledged that, under *Valdez v. State*, 46 P.3d 703, 710-11 (Okla. Crim. App. 2002), it "has the authority to review any error raised which has resulted in a miscarriage of justice or which constitutes a substantial violation of a constitutional or statutory right," *Nolen III* at 7 (citing Okla. Stat. tit. 20, § 3001.1), but found Mr. Nolen did not meet this exception:

> Nolen's situation does not present the unique and compelling difficulties found in *Valdez*. Rather, Nolen's claims stem from ordinary investigative decisions like those made by trial counsel in every case. . . . The probability of a miscarriage of justice in *Valdez* concerned a serious substantive issue underlying the finding of ineffective assistance of counsel. Nolen presents no such substantive issue; he shows neither a probability of a miscarriage of justice, nor that he was deprived of a substantial constitutional or statutory right.

*Id.* at 7-8. OCCA "decline[d] to exercise [its] inherent power to override all procedural bars and grant relief." *Id.* at 8.

The Tenth Circuit has held that "assuming that *Valdez* created a discretionary exception to [§ 1089(D)], this does not necessarily render [§ 1089(D)] 'inadequate,'" as "a discretionary rule can be 'firmly established' and 'regularly followed.'" *Thacker v. Workman*, 678 F.3d 820, 836 (10th Cir. 2012) (quoting *Kindler*, 558 U.S. at 60-61). However, even a discretionary procedural rule is inadequate unless it is regularly applied consistent with an intelligently delineated principle. *See Walker v. Martin*, 562 U.S. 307, 317 (2011); *Gutierrez v. Moriarty*, 922 F.2d 1464, 1469-70 (10th Cir. 1991). "A state ground . . . may be found inadequate when 'discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law . . . .'" *Walker*, 562 U.S. at 320 (citations omitted).

According to the Tenth Circuit, "[T]he *Valdez* exception only applies in cases involving an exceptional circumstance, and it is insufficient to overcome Oklahoma's regular and consistent application of its procedural-bar rule [§ 1089(D)] in the vast majority of cases." *Pavatt v. Carpenter*, 928 F.3d 906, 930 (10th Cir. 2019) (citation and footnote omitted). *See also Black v. Workman*, 682 F.3d 880, 917 (10th Cir. 2012); *Thacker*, 678 F.3d at 835-36. In *Pavatt*, the claim at issue – challenging a jury instruction – was "far from exceptional: it is a claim that was readily apparent from the trial record and that could and arguably should have been raised on direct appeal." 928 F.3d at 930.

Unlike *Pavatt*, Mr. Nolen's case involves "exceptional circumstance[s]," and the bars applied by OCCA despite its discretion under *Valdez* were exorbitant, novel, and unforeseeable. 928 F.3d at 930. As described above, *see supra* at 9-11, OCCA has specifically recognized the need to allow "extraordinary relief" in *Atkins* cases given the

"mandate from the highest court of the land" prohibiting "the execution" of the intellectually disabled.[13] *Powell*, No. PCD-2003-89, slip op. at 4. As discussed below, OCCA applies *Valdez* to correct death sentences undermined by new evidence, to correct outcome-determinative errors, and to prevent substantial constitutional violations. *See infra* at 18-19. Evidentiary and diagnostic developments undermine the jury's and OCCA's prior assessments of Mr. Nolen's *Atkins* claim and show that he is, in fact, a person with intellectual disability and establish his constitutional ineligibility for his death sentence. *See* Doc. 22 at 47-57. Accordingly, Mr. Nolen's case warranted review under *Valdez*.

The specifics of Mr. Nolen's case show its exceptional circumstances. Although he established that he is entitled to *Atkins* relief with the evidence presented at trial, on direct appeal, and in his initial post-conviction proceedings, *see* Doc. 22 at 5-47, the new evidence in the SAPCR confirming his intellectual disability is significant. Because OCCA had previously held that he met prong one of *Atkins*, *see Nolen v. State*, slip op. at 5, No. PCD-2018-215 (Okla. Crim. App. Jan. 27, 2022) ("*Nolen II*"), prongs two and three were the only grounds for denying relief at trial, on direct appeal, or on post-conviction. As to these two prongs, the trial prosecutor argued and/or the State's expert testified that Mr. Nolen was not a person with intellectual disability because: (1) he was not in special education classes during middle school, the only academic assistance he received was a credit recovery program in high school, and this program was separate from students with

---

[13] For the reasons set forth above, *see supra* at 9-12, to the extent *Valdez* renders Rule 9.7(G) discretionary, it is inadequate because it is not regularly applied in *Atkins* cases consistent with an intelligently delineated principle. *See Walker*, 562 U.S. at 317; *Gutierrez*, 922 F.2d at 1469-70.

intellectual disability, learning disorders, or special education, Tr. 3345-46, 3434-36; (2) his performance in college was inconsistent with a diagnosis of intellectual disability, Tr. 3348-49; (3) he had no impairments in communication, Tr. 3336-37, 3342-43; (4) he did not show deficits while playing football, Tr. 3431-32, 3436-37; (5) his only social deficits related to lawbreaking, Tr. 3433-34; and (6) he did not have deficits in daily living skills, Tr. 3439. Based on this testimony and argument, the jury rejected Mr. Nolen's *Atkins* claim, *Nolen v. State*, 485 P.3d 829 (Okla. Crim. App. Mar. 18, 2021) ("*Nolen I*") affirmed this verdict, and *Nolen II* denied post-conviction relief.

The new evidence proffered in Mr. Nolen's SAPCR demonstrates that all the above arguments and testimony were wrong: (1) Mr. Nolen was in a self-contained classroom during middle school that was outside of the special education program but provided significant academic support, *see* Doc. 22 at 48-49; (2) the credit recovery program in which he was placed was designed for struggling students, this program provided significant support to him, and he still struggled academically, *see id.*; (3) the colleges he attended were "second chance" institutions designed to provide significant support to students with impairments, and shunted him towards remedial courses, *see id.* at 49-50; (4) he had significant problems with communication, learning, and executive functioning throughout his life as confirmed by multiple witnesses, *see id.* at 50-51; (5) he had significant impairments on the football field, had to be spoon-fed plays, still had difficulties learning them, and was only successful because of his size, *see id.* at 51-52; (6) he was not a leader, he was gullible, and he was taken advantage of by his peers, *see id.* at 51-52; and (7) he did not live independently and required significant support from others even as an

adult, *see id.* at 52. Because this new evidence vindicated trial counsel's *Atkins* presentation on contested issues and demonstrated that the arguments made by the prosecutor at trial were incorrect, it constituted significant new evidence establishing Mr. Nolen's constitutional ineligibility for the death penalty.

Furthermore, the new diagnostic standards set out in the AAIDD-2021 – changing the age-of-onset criterion from eighteen to twenty-two years old and confirming that adaptive deficits are present when an individual is not meeting age-related expectations – render the analyses put forward by *Nolen I* and *Nolen II* obsolete and contrary to current diagnostic standards and *Moore I. See* Doc. 22 at 53.

As Mr. Nolen argued in his SAPCR, because "the Constitution 'places a substantive restriction on the State's power to take the life' of" "*any* intellectually disabled individual," *Atkins*, 536 U.S. at 321 (citation omitted); *Moore I*, 581 U.S. at 12, barring the consideration of the new evidence and updated diagnostic standards would violate *Atkins* and its progeny; he is intellectually disabled and thus ineligible for execution regardless of whether the evidence and standards could have been presented previously in state court. Prohibiting review of this new evidence and the updated standards would bind his *Atkins* determination to the evidence and standards presented previously, no matter what new evidence might exist or how out of date those standards might be. This would violate *Moore I*'s requirement that *Atkins* claims be assessed under current diagnostic standards and would "'creat[e] an unacceptable risk that persons with intellectual disability will be executed.'" *Moore I*, 581 U.S. at 6 (citation omitted).

The exceptional circumstances in Mr. Nolen's case are similar to those in *Valdez* and other cases in which OCCA has applied the *Valdez* exception. In *Valdez*, OCCA reviewed (and granted) the SAPCR where trial counsel failed to present mitigating evidence including brain damage and, had the Vienna Convention been honored, counsel would have found and presented that evidence. 46 P.3d at 706, 710. Even though prior counsel could have presented the evidence, the Court granted relief because it could not "have confidence in the jury's sentencing determination and affirm its assessment of a death sentence where the jury was not presented with very significant and important evidence bearing upon Petitioner's mental status and psyche at the time of the crime." *Id.* at 710. Just as the evidence in *Valdez* undermined confidence in the jury's verdict, the factual and diagnostic developments presented in Mr. Nolen's SAPCR undermined confidence in both the jury's and OCCA's *Atkins* determinations. To the extent Mr. Nolen's case differs from *Valdez*, Mr. Nolen's circumstances present an even more exceptional case for merits review by OCCA; his evidence is not merely mitigating, as in *Valdez*, but shows Mr. Nolen is constitutionally ineligible for the death penalty. As with *Malicoat v. State*, 137 P.3d 1234, 1235 (Okla. Crim. App. 2006) – where OCCA applied *Valdez* to consider whether Oklahoma's lethal injection protocol violated the Eighth Amendment – "[i]f [Mr. Nolen]'s claim is correct," his execution would "substantially violat[e]" the Constitution.

In *Slaughter v. State*, 108 P.3d 1052, 1054 (Okla. Crim. App. 2005) (citing Okla. Stat. tit. 22, § 1089(C)(2)), OCCA applied the *Valdez* exception, holding that review of a SAPCR is warranted in the case of "outcome determinative errors and factual innocence claims." Mr. Nolen's *Atkins* claim is outcome determinative, as he is entitled to sentencing

relief if he succeeds on the claim. He is also innocent of the death penalty. In *Glossip v. State*, 529 P.3d 218, 225 (Okla. Crim. App. 2023), *cert. granted*, 144 S. Ct. 691 (2024), *and rev'd and remanded*, 145 S. Ct. 612 (2025) (citations omitted), OCCA cited *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992), in explaining that "[c]laims of factual innocence must be supported by clear and convincing evidence." *Sawyer* held that to overcome a procedural default on federal habeas review based on actual innocence of the death penalty, a petitioner must show "by clear and convincing evidence that but for constitutional error . . . no reasonable juror would have found him eligible for the death penalty." 505 U.S. at 350. Mr. Nolen presented to OCCA clear and convincing evidence that he is intellectually disabled and thus constitutionally ineligible for the death penalty. *See supra* at 16-17.

Given the "exceptional circumstance[s]," *Pavatt*, 928 F.3d at 930, the bars' application here was "exorbitant," *Lee*, 534 U.S. at 376, and "novel and unforeseeable," "lacking fair or substantial support in prior state law," *Cruz*, 598 U.S. at 32.

## 2.  The State Procedural Bars Are Not Independent.

In addition to being inadequate, the procedural bars applied by OCCA are not independent of federal law. "A state ground of decision is independent only when it does not depend on a federal holding, . . . and also is not intertwined with questions of federal law. . . ." *Glossip*, 145 S. Ct. at 624 (citing *Foster v. Chatman*, 578 U.S. 488, 498 (2016); *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)). A state law ground is not independent where "the State has made application of the procedural bar depend on an antecedent ruling on federal law, that is, on the determination of whether federal constitutional error has been

committed." *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).[14] "'[W]hen the adequacy and independence of any possible state law ground is not clear from the face of the opinion, [courts] will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.'" *Glossip*, 145 S. Ct. at 624-25 (quoting *Long*, 463 U.S. at 1040-41).

In *Glossip*, the Supreme Court found OCCA's application of § 1089(D) "pose[d] no impediment to [the Court's] review" of the claims presented in his SAPCR. 145 S. Ct. at 625. There, OCCA had "rejected the attorney general's confession of error [under *Napue v. Illinois*, 360 U.S. 264 (1959)] as having no basis 'in law or fact,' and explained that it would therefore apply [§ 1089(D)]." *Id.* at 626. The Supreme Court concluded that OCCA's application of § 1089(D) despite the confession of error "depended on [OCCA's] determination that no *Napue* violation had occurred," which "was a federal holding." *Id.* at 625. The Court also determined, "To the extent that the OCCA's reasoning on this point is insufficiently 'clear from the face of the opinion,' we nonetheless presume reliance on federal law under [*Long*]." *Id.* at 626 (quoting *Long*, 463 U.S. at 1040-41).

Likewise, here, "OCCA 'made application of the procedural bar[s] depend on an antecedent ruling on federal law, that is, on the determination of whether federal constitutional error ha[d] been committed.'" *Glossip*, 145 S. Ct. at 626 (quoting *Ake*, 470

---

[14] *Ake* held that where "under Oklahoma law there was no procedural bar if the alleged error was 'fundamental trial error'; and federal constitutional error was considered an error of that type," "OCCA could not apply the waiver rule without first addressing the federal constitutional error," and "the state waiver rule was therefore not an independent state ground for barring review." *Black*, 682 F.3d at 918 (quoting *Ake*, 470 U.S. at 74-75).

U.S. at 75). Specifically, OCCA's conclusion that Mr. Nolen did not show "that he was deprived of a substantial constitutional . . . right," *Nolen III* at 8, depended on an antecedent determination of whether Mr. Nolen's death sentence is unconstitutional under *Atkins* and its progeny. As in *Glossip*, "[t]hat was a federal holding, and it was the only reason the OCCA provided for its conclusion" that Mr. Nolen could not overcome the bars. 145 S. Ct. at 625. "To the extent that the OCCA's reasoning on this point is insufficiently 'clear from the face of the opinion,'" the Court should "nonetheless presume reliance on federal law under [*Long*]." *Id.* (quoting *Long*, 463 U.S. at 1040-41).

As Mr. Nolen argued to OCCA, "the Constitution 'places a substantive restriction on the State's power to take the life' of" "*any* intellectually disabled individual," *Atkins*, 536 U.S. at 321 (citation omitted); *Moore I*, 581 U.S. at 12, and barring the consideration of the new evidence and updated diagnostic standards would violate *Atkins* and its progeny, "'creat[ing] an unacceptable risk that [a person] with intellectual disability will be executed.'" *Moore I*, 581 U.S. at 6 (citation omitted). In declining to apply the *Valdez* exception and review the merits of Mr. Nolen's claim because he did not show "that he was deprived of a substantial constitutional . . . right," *Nolen III* at 8, OCCA rejected these arguments and endorsed the constitutionality of Mr. Nolen's death sentence. Accordingly, OCCA's "application of the procedural bar[s] depend[ed] on an antecedent ruling on federal law." *Glossip*, 145 S. Ct. at 626.

The concurring opinion confirms the lack of independence. In declining to find that Mr. Nolen "was deprived of a substantial constitutional . . . right," *Nolen III* at 8, at least two judges explicitly rejected *Moore I*'s requirement that *Atkins* claims be assessed under

current diagnostic standards. Judge Lumpkin, joined by Judge Hudson, explained in a special concurrence that "organizations like [the AAIDD] cannot change" the requirements for "mental retardation as set out by the U.S. Supreme Court in [*Atkins*]." *Nolen III* at 13 (Lumpkin, J., specially concurring). The judges complained that "[t]he study of psychology and psychiatry . . . are very subjective areas of study," and "[t]his nature of the organizations is reflected in the change of the diagnosis from mental retardation to the more politically correct labeling of Intellectual Disability." *Id.* at 13-14. Citing an article authored by a prosecutor before *Moore I* was issued, the judges questioned "the authoritative use of the DSM-5 in forensic proceedings." *Id.* at 14 (citation omitted). This analysis contravenes *Moore I*, which specifically endorsed "reli[ance] on the most recent (and still current) versions of the leading diagnostic manuals – the DSM-5 and the AAIDD-11." *Moore I* at 13 (citations omitted). In explicitly (and erroneously) rejecting the requirements of *Moore I*, the concurring judges ruled on federal law.

Mr. Nolen's argument is not undermined by Tenth Circuit cases declining to find that *Valdez* renders the procedural bars dependent on federal law. *Banks v. Workman*, 692 F.3d 1133 1145-46 (10th Cir. 2012), held that "the mere fact Oklahoma courts *might* in some instances make an implicit judgment about the federal claim when choosing how to exercise this discretion does not deprive the procedural bar [§ 1089(D)] its independence." There, "[t]he OCCA's decision . . . relied only upon the text of § 1089(D) and never mentioned the possibility of invoking an exception." *Id.* at 1146. In *Fairchild v. Trammell*, 784 F.3d 702, 719 (10th Cir. 2015), where "the OCCA opinion reported that Defendant had invoked *Valdez*," the Tenth Circuit determined that while one could "infer from the

citation . . . that the OCCA considered *Valdez*," the issue was "whether it considered the merits of the federal claims in doing so. And there is nothing to suggest it did." Here, unlike in *Banks*, OCCA explicitly discussed *Valdez*, and unlike in *Fairchild*, it is clear OCCA considered the merits of Mr. Nolen's federal *Atkins* claim in doing so; OCCA held, "Nolen presents no [serious] substantive issue [as in *Valdez*]; he shows neither a probability of a miscarriage of justice, *nor that he was deprived of a substantial constitutional . . . right*." *Nolen III* at 8 (emphasis added). The procedural bars applied by OCCA are not independent of federal law and "pose no impediment to [the Court's] review in this case." *Glossip*, 145 S. Ct. at 626.

### 3.  Mr. Nolen Can Show Cause and Prejudice.

If this Court finds that Rule 9.7(G) was an adequate and independent state ground, Mr. Nolen can demonstrate cause for his failure to comply and prejudice resulting from the constitutional violation. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 479 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by officials[]' . . . made compliance impracticable, would constitute cause under this standard." *Id.* (citations omitted). Mr. Nolen must also show "actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977).

An "objective factor external to the defense," *Carrier*, 477 U.S. at 479 – state procedural rules preventing supplementation – impeded Mr. Nolen's ability to present the

updated diagnostic standards within sixty days of their issuance. *See supra* at 12. While the basis for his claim was available, the state's rules "made compliance impracticable." *Carrier*, 477 U.S. at 479. The "actual prejudice resulting from the alleged constitutional violation" is a death sentence for which Mr. Nolen is constitutionally ineligible. *Sykes*, 433 U.S. at 84. Thus, even if the Court finds Rule 9.7(G) was adequate and independent, it can consider Mr. Nolen's claim under current standards.

### 4.   Denying Mr. Nolen Full Review of His *Atkins* Claim Would Result in a Miscarriage of Justice.

Even if the Court finds the second component of Mr. Nolen's claim procedurally defaulted under § 1089(D), Rule 9.7(G), or both, the Court should review it because the failure to do so will result in a fundamental miscarriage of justice, *see Coleman*, 501 U.S. at 750, as explained in his habeas petition and reply, *see* Doc. 22 at 55-57; Doc. 49 at 29-30. He can establish by clear and convincing evidence that he is intellectually disabled and thus constitutionally ineligible for the death penalty. *See Sawyer*, 505 U.S. at 350. He has presented evidence that he satisfies all three prongs of the diagnosis, and his claim has never been adjudicated under current standards. Barring consideration of new evidence and consideration of the claim under current standards would violate *Atkins* and its progeny and "'creat[e] an unacceptable risk that [a person] with intellectual disability will be executed.'" *Moore I*, 581 U.S. at 6 (citation omitted).

### B.   This Court Should Review the Second Component of the Claim De Novo.

In *Nolen III*, OCCA did not make merits findings. Thus, if this Court finds – as it should – that this component of Mr. Nolen's *Atkins* claim is not procedurally defaulted, or that he overcomes default, the Court must review it de novo. *See Eaton*, 931 F.3d at 1019.

## IV.    Conclusion

Mr. Nolen's *Atkins* claim was exhausted on direct appeal and post-conviction. Because OCCA's adjudications were unreasonable, review is de novo, and the Court can consider the new evidence and standards. Alternatively, exhaustion of the second component of the claim is now complete, procedural bars do not preclude review, and the Court should review it in conjunction with the first de novo.

Respectfully submitted,

*s/ Meghan LeFrancois*
Meghan LeFrancois
Katherine Ensler
Assistant Federal Defenders
Federal Community Defender Office for
the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520 (phone)
(215) 928-0826 (fax)
Katherine_Ensler@fd.org
Meghan_LeFrancois@fd.org

*s/ Hunter S. Labovitz*
Hunter S. Labovitz
Assistant Federal Public Defender
Western District of Oklahoma
Capital Habeas Unit
215 Dean A. McGee, Suite 707
Oklahoma City, OK 73102
(405) 609-5975 (phone)
(405) 609-5976 (fax)
Hunter_Labovitz@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of April, 2025, I electronically transmitted the attached document to the Clerk of Court using ECF System for filing and transmittal of a Notice of Electronic Filing to:

Caroline E.J. Hunt
Jennifer L. Crabb
Assistant Attorneys General
fhc.docket@oag.ok.gov

<u>*s/ Meghan LeFrancois*</u>
Meghan LeFrancois
Assistant Federal Defender