IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALTON NOLEN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. CIV-22-272-R |
| ) | |
| CHRISTE QUICK, Acting Warden, ) | Judge David L. Russell |
| Oklahoma State Penitentiary, ) | (Capital Case) |
| ) | |
| Respondent. ) | |

**PETITIONER'S REPLY IN SUPPORT OF SUPPLEMENTAL
BRIEF FOLLOWING STATE COURT DECISION**

**A.    Petitioner, Alton Nolen, Has Not Waived His Exhaustion Argument.**

Mr. Nolen argues that his *Atkins v. Virginia*, 536 U.S. 304, (2002), claim was exhausted on direct appeal and original post-conviction because the new evidence and diagnostic standards—those first presented in his successive application for post-conviction relief (SAPCR)—do not place the claim in a significantly different legal posture. Doc. 64 at 1-5. Respondent claims this argument is foreclosed because Mr. Nolen "admitted" in his habeas petition that the component of his claim relying on new evidence and standards was unexhausted. Doc. 67 at 2-3.

Mr. Nolen did not argue in his habeas petition that his *Atkins* claim was unexhausted due to the inclusion of the new evidence and standards, but that the component based on these new *materials* had not been exhausted before the litigation of his SAPCR as these materials had not yet been given to OCCA to consider. *See, e.g.*, Doc. 22 at 55, 47 n.13. That is completely consistent with his current argument that the new materials do not fundamentally alter the claim.

1

Furthermore, Mr. Nolen's exhaustion argument relies partly on Respondent's claim that the new evidence was cumulative of the previously presented evidence and the updated standards do not strengthen the claim—an argument that "effectively concede[d]" the claim was not fundamentally altered. Doc. 49 at 25; Doc. 51 at 5; Doc. 64 at 3. Respondent first made this concession in response to Mr. Nolen's habeas petition, Doc. 38 at 60-65; Mr. Nolen raised his argument at the first opportunity after Respondent's concession.

"Waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (citations omitted). Mr. Nolen did not intentionally relinquish or abandon any right, and the waiver cases cited by Respondent—*Fontenot v. Crow*, 4 F.4th 982 (10th Cir. 2021), and *Eaton v. Pacheco*, 931 F.3d 1009 (10th Cir. 2019)—are inapposite. *Fontenot* determined the State had waived the exhaustion requirement by "expressly conceding" it. *Fontenot*, 4 F.4th at 1021. Mr. Nolen has never conceded the *Atkins* claim was unexhausted. In *Eaton*, the Tenth Circuit found a waiver after a petitioner first raised arguments in a motion to amend the habeas judgment and in a reply *on appeal*. 931 F.3d at 1028, 1030. *Eaton* was based on the general rule that claims cannot be first raised after the district court denies relief and the concern that the respondent would not have the opportunity to respond to the new arguments. *Id.* But Mr. Nolen first raised the argument at issue nearly two years ago in his habeas reply and his motion for an evidentiary hearing and did so again in his supplemental brief devoted to procedural issues. Doc. 49 at 25; Doc. 51 at 4-6; Doc. 64 at 1-5. Because Respondent has identified no authority barring Mr. Nolen from first making this argument when he did and Respondent

had ample opportunity to respond, *Eaton* does not apply here.

Respondent does not engage with the merits of Mr. Nolen's exhaustion argument but, in a footnote, expresses "doubt[]" given his proffer of a new expert report. Doc. 67 at 3 n.4. This Court rejected that argument in *Harris v. Farris*, No. CIV-08-375-R, 2021 WL 165123 (W.D. Okla. Jan. 19, 2021). *See* Doc. 64 at 3-4. And, again, Respondent effectively conceded exhaustion of Mr. Nolen's claim by arguing the new evidence was cumulative.

### B.    Respondent's Claim that the 60-Day Rule Is Adequate Lacks Merit.

Mr. Nolen avers that OCCA does not regularly follow Rule 9.7(G)(3) ("the 60-day rule") and has repeatedly excused violations in other *Atkins* cases. Doc. 64 at 8-12. Respondent contends that most of these cases were timely because the SAPCRs were filed within sixty days of OCCA's issuance of *Murphy v. State*, 54 P.3d 556 (Okla. Crim. App. 2002), which OCCA set as the "triggering date" for the 60-day period since *Murphy* established a standard for *Atkins* claims in Oklahoma. Doc. 67 at 7-8. Acknowledging OCCA did not even follow this revised timeline in three cases, Respondent argues that OCCA construed filings made in those cases as extension requests. Doc. 67 at 8-9. Respondent points to the "herculean task" facing counsel of investigating these cases in the aftermath of *Atkins*. *Id.* at 9-10. Respondent also contends that all the cases Mr. Nolen relies on are too "stale" to support a finding that the 60-day rule is inconsistently applied and that "there is abundant, recent authority confirming the adequacy of the 60-day rule." *Id.* at 4-7, 10.

Respondent errs. **First**, the "abundant, recent authority" cited by Respondent—consisting of five federal cases—does not demonstrate the 60-day rule's adequacy. Doc. 67 at 6. The first three cases make no determination as to the rule's adequacy, and thus, are

3

irrelevant. *See Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 908 n.23 (10th Cir. 2019); *Fairchild v. Trammell*, 784 F.3d 702, 719 (10th Cir. 2015); *DeRosa v. Workman*, 679 F.3d 1196, 1235 (10th Cir. 2012). The remaining two (unpublished) cases purportedly address the rule's adequacy: *Martinez v. Royal*, No. CIV-16-1278-D, 2019 WL 80440, *5 (W.D. Okla. Jan. 2, 2019), and *Goode v. Duckworth*, No. 11-CV-150-GKF-FHM, 2016 WL 3748279, *16 (N.D. Okla. July 11, 2016). But *Martinez* addressed only an as-applied adequacy challenge, 2019 WL 80440, at *3, and *Goode* addressed only whether *Valdez v. State*, 46 P.3d 703 (Okla. Crim. App. 2002), rendered the bar inadequate. 2016 WL 3748279, at *15. Neither opinion addressed generally whether the 60-day rule was regularly applied. And all of Respondent's cited federal cases purportedly establishing the 60-day rule's adequacy were issued before 2020, when Respondent acknowledged in another case that "some questions remain about whether the federal courts will honor the bar found in Rule 9.7(G)(3)" and requested that OCCA "explicitly state that the claims are *also* barred pursuant to . . . [§] 1089(D)," which is "well established in federal court." SAPCR Response at 12-13, *Tryon v. State*, No. PCD-2020-231 (Okla. Crim. App. Apr. 23, 2020) (Att. 1).

**Second**, whether a state rule is consistently followed turns not on how recent the supporting authority is but on whether the "application of the particular procedural default rule to *all similar claims* has been evenhanded in the vast majority of cases." *Spears v. Mullin*, 343 F.3d 1215, 1254 (10th Cir. 2003) (emphasis added) (citation omitted). Of the recent OCCA cases cited by Respondent as applying the 60-day rule, Doc. 67 at 6-7, only two involved *Atkins* claims, and those two are not similar to Mr. Nolen's because the petitioners (Richard Glossip and Ronnie Fuston) had IQ scores above Oklahoma's cutoff for

4

intellectual disability. *See* SAPCR at 117, *Glossip v. State*, No. PCD-2022-589 (Okla. Crim. App. July 1, 2022) (Att. 2); *Fuston v. State*, PCD-2022-286, slip op. at 9-10 (Okla. Crim. App. July 7, 2022) (Doc. 67-6); Okla. Stat. tit. 21, § 701.10b(C). Mr. Nolen's claim, in contrast, involves two intellectual-disability level IQ scores that OCCA found to establish deficient intellectual functioning, a robust presentation on adaptive impairments that OCCA has never evaluated in full, and an age-of-onset presentation that OCCA has never considered under current diagnostic standards. *See*, *e.g.*, Doc. 22 at 7-54; Doc. 64 at 15-17.

*Atkins* claims are different from other claims because *Atkins* established a "substantive restriction on the State's power to take the life" of a person with intellectual disability, 536 U.S. at 321, exempting a category of offenders from execution. *See*, *e.g.*, Doc. 22 at 55-57. OCCA acknowledged the "extraordinary" nature of this exemption, *see* Doc. 64 at 10-11, and the Supreme Court has rejected all proceedings that create an "unacceptable risk" that a person with intellectual disability will be denied relief and executed, *Moore v. Texas*, 581 U.S. 1, 6 (2017). Accordingly, this Court should consider OCCA's application of the 60-day rule to other *Atkins* claims.

*Third*, Respondent claims to have surveyed every SAPCR decided since 2021 and determined that "OCCA did not fail to apply the 60-day rule in any relevant case." Doc. 67 at 7 n.6. Respondent does not explain her metric for relevance, but she omitted at least one clearly relevant case. In *Tryon v. State*, No. PCD-2020-231, slip op. at 13-22 (Okla. Crim. App. Mar. 11, 2021) (Att. 3), the petitioner submitted additional evidence of intellectual disability in his SAPCR. OCCA explicitly declined to apply the 60-day rule "without a more extensive knowledge of Petitioner's opportunity to develop these claims," as OCCA

5

noted it had done in a 2017 case. *Id.* at 13 n.3.

**Fourth**, the fact that OCCA identified *Murphy* as the start date for the 60-day rule *strengthens* Mr. Nolen's argument rather than weakens it. By prohibiting the execution of all defendants with intellectual disability, *Atkins* provided the legal basis for this claim, and its issuance should have started the 60-day clock under Rule 9.7(G)(3). Doc. 64 at 9-10.

**Fifth**, Respondent's attempt to distinguish the three cases in which petitioners filed "notices" that OCCA construed as extension requests is unavailing. Rule 9.7(G)(3) makes no allowances for notices or extensions of time. In permitting these litigants to file their claims nine, four, and three months after their due dates following *Murphy*, OCCA did not consistently apply the 60-day rule to *Atkins* cases. Doc. 64 at 10.

**Sixth**, Respondent's reliance on *Smith v. State*, 245 P.3d 1233 (Okla. Crim. App. 2010), is meritless. Citing *Smith*, Respondent argues that "Petitioner admits the OCCA applied the 60-day rule to an *Atkins* claim in a situation such as his, that is, to a petitioner who was tried after *Atkins* was decided." Doc. 67 at 10. But Mr. Nolen made clear that Smith's case was not similar as it involved an *Atkins* claim with IQ scores above Oklahoma's cutoff for intellectual disability. Doc. 64 at 10 n.6. Mr. Nolen's case is not similar to *Smith* for the reasons it is not similar to *Glossip* or *Fuston*, as explained above.

Even if Smith's, Glossip's, and Fuston's *Atkins* cases were similar to Mr. Nolen's, they would not advance Respondent's point. Respondent cites nine SAPCR cases following *Atkins* where the 60-day rule was not applied—each of the eleven cases cited at Doc. 67 at 9, except *Blonner v. State*, 127 P.3d 1135 (Okla. Crim. App. 2006), and *Murphy v. State*, 54 P.3d 556 (Okla. Crim. App. 2002)), which were not SAPCRs filed after *Atkins*—and OCCA

6

referred to the existence of fifteen such cases, Doc. 64 at 10. Neither included *Tryon*. For a procedural bar to be adequate, the state must apply it evenhandedly to "all similar claims" in the "vast majority of cases." *Spears*, 343 F.3d at 1254. Applying the 60-day rule in either four out of fourteen or four out of twenty *Atkins* cases does not meet this standard.

Respondent also relies on *Smith* to counter Mr. Nolen's alternative argument that even if the Court finds the 60-day rule is firmly established and regularly followed, its application in this case was "exorbitant" and "novel" and "unforeseeable." Doc 64 at 13 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002); *Cruz v. Arizona*, 598 U.S. 17, 32 (2023)). Respondent claims "the bar was applied to a similar claim more than decade ago in *Smith*, making its application here foreseeable." Doc. 67 at 11. But OCCA's application of the rule "more than a decade ago" to a single case that is dissimilar, as explained above, does not make the rule's application here foreseeable.

***Finally***, Respondent hypothesizes about the "herculean task" facing defense counsel in the wake of *Atkins* and claims that Mr. Nolen "acknowledge[ed] that OCCA viewed this situation as 'extraordinary.'" Doc. 67 at 9-10. On the contrary, instead of expressing concern about the burden on counsel, OCCA stated (and Mr. Nolen argued) that the relief OCCA granted to *Atkins* claimants with respect to the 60-day rule was due to "a mandate from the highest court of the land" that the execution of people with intellectual disability was categorically "prohibited . . . as unconstitutional." Doc. 64 at 10-11 (quoting *Powell v. State*, No. PCD-2003-89, slip op. at 4 (Okla. Crim. App. June 11, 2003) (Doc. 64-5)); Doc. 64 at 16-17. That mandate applies to Mr. Nolen. Respondent has not met her burden of proving the rule's adequacy. *Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir. 1999).

7

      **C.**     **Respondent Misconstrues the Miscarriage of Justice Doctrine.**

Respondent argues that Mr. Nolen cannot demonstrate a miscarriage of justice to overcome procedural default because *Sawyer v. Whitley*, 505 U.S. 333 (1992), was focused on factual innocence of the death penalty as shown by an absence of aggravating circumstances and "declined to look at possible errors in mitigation," and an *Atkins* claim is an affirmative defense. Doc. 67 at 19-20. Respondent further argues that Mr. Nolen has not satisfied *Sawyer* because OCCA did not find him to be a person with intellectual disability under state law. *Id.* at 20-21.

Respondent's argument ignores the plain language of *Sawyer*, which held that the relevant analysis turns on whether a defendant is "eligible for the death penalty" should the defaulted claim be considered. 505 U.S. at 336. Because a diagnosis of intellectual disability establishes ineligibility for execution, an *Atkins* claim fits squarely within *Sawyer*'s language. That *Sawyer* did not encompass unpresented mitigation is irrelevant; the Court however excluded mitigation claims from consideration because they did not bear on "eligibility to receive the death penalty, but only on the ultimate discretionary decision" between life and death. *Id.* at 343. Because a life sentence is not discretionary if *Atkins* relief is granted, *Sawyer*'s ruling on mitigation evidence is irrelevant.

Respondent's attempt to portray an *Atkins* claim as a claim of legal (not factual) innocence because it is the defendant's burden to prove that he fits the diagnosis is similarly unavailing. Doc. 67 at 19-20. *Sawyer* did not hold that innocence-of-the-death-penalty claims must relate to an aggravating circumstance, but only that the petitioner must prove no reasonable juror would have found him *eligible* for the death penalty. 505 U.S. at 336,

8

343-45. *Sawyer* focused on the absence of an aggravating factor because the Court had not created categorical exemptions from the death penalty such as *Atkins* and—at that time—aggravating factors were the method states "used to narrow the class of defendants eligible for the death penalty." *Id.* at 341-43. Because an *Atkins* claim serves this purpose now, it falls squarely within *Sawyer*, as the Tenth Circuit has confirmed. *Black v. Workman*, 682 F.3d 880, 916 (10th Cir. 2012) (emphasis added) (*Sawyer* applies to "the absence of aggravating circumstances *or some other condition of eligibility*").

More to the point, excluding *Atkins* claims from the miscarriage of justice analysis would preclude review for petitioners with intellectual disability regardless of how compelling their claims might be. *See* Doc. 22 at 55-57. This would pave the way for the execution of people with intellectual disability in violation of *Atkins* and *Moore*. *Id.*

Respondent's argument that Mr. Nolen is not a person with intellectual disability under "state law" similarly fails. Doc. 67 at 21. State courts can't bypass the Eighth Amendment simply by declaring that a person with intellectual disability is "not intellectually disabled." *Id*. *Moore* held that while states have "some flexibility" in defining intellectual disability, the Eighth Amendment doesn't give them "unfettered discretion." 581 U.S. at 20. Current diagnostic standards form "one constraint on States' leeway in this area." *Id.* The Supreme Court has rejected the failure to abide by current standards as unconstitutional and has also specifically rejected diagnostically inappropriate practices as violating this rule. *Id.* State courts are similarly prohibited from basing a denial of relief on an unreasonable finding of fact or conclusion of law. *See* 28 U.S.C. § 2254(d). OCCA's merits determination of Mr. Nolen's *Atkins* claim on direct appeal and post-conviction violated current

diagnostic standards, was contrary to or an unreasonable application of *Moore*, and was based on unreasonable findings of fact. Doc. 22 at 23-47; Doc. 28 at 15-25.

Furthermore, OCCA did not consider Mr. Nolen's *Atkins* claim on the merits with the new evidence and under the new standards. The point of *Sawyer* was that the new evidence or claim should be considered if a miscarriage of justice would otherwise occur. 505 U.S. at 339. *Sawyer* would be a nullity if the federal court was bound by a state court determination that did not consider the new evidence based on procedural grounds.

Respondent's reliance on *Tryon v. Farris*, 2021 WL 3042664 (W.D. Okla. July 19, 2021) (unpublished), *Frazier v. Jenkins*, 770 F.3d 485 (6th Cir. 2014), and *Prieto v. Zook*, 791 F.3d 465 (4th Cir. 2015), is misplaced. Doc. 67 at 20. In each of these cases, the reviewing courts did not blindly adopt the state court determinations but made their own determinations of the *Atkins* claims based on then-applicable federal *Atkins* precedent. *Frazier*, 770 F.3d at 497-99 (reviewing *Atkins* claim, including reference to Supreme Court precedent); *Prieto*, 791 F.3d at 469-72 (same); *Tryon*, 2021 WL 3042664, at *10-13 (basing review of state court's *Atkins* determination on consistency with *Moore*, current diagnostic standards, and other Supreme Court precedent).

Finally, Mr. Nolen more than meets the level of proof needed. As OCCA held that he had met *Atkins*'s first element, Mr. Nolen's claim was denied at trial and on direct appeal and post-conviction as to the last two elements based on testimony and arguments advanced by the State and endorsed by OCCA. Doc. 64 at 15-17. The new evidence and standards debunked those arguments, demonstrated Mr. Nolen was even more impaired than previously thought, and showed the prior expert's age-of-onset analysis was obsolete. *Id.*

10

Respectfully submitted,

*s/ Meghan LeFrancois*
Meghan LeFrancois
Katherine Ensler
Assistant Federal Defenders
Federal Community Defender Office for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520 (phone)
(215) 928-0826 (fax)
Meghan_LeFrancois@fd.org
Katherine_Ensler@fd.org

*s/ Hunter S. Labovitz*
Hunter S. Labovitz
Assistant Federal Public Defender
Western District of Oklahoma
Capital Habeas Unit
215 Dean A. McGee, Suite 707
Oklahoma City, OK 73102
(405) 609-5975 (phone)
(405) 609-5976 (fax)
Hunter_Labovitz@fd.org

*Counsel for Petitioner Alton Nolen*

## CERTIFICATE OF SERVICE

       I hereby certify that on the 20th day of June, 2025, I electronically transmitted the attached document to the Clerk of Court using ECF System for filing and transmittal of a Notice of Electronic Filing to:

Caroline E.J. Hunt
Jennifer L. Crabb
Assistant Attorneys General
fhc.docket@oag.ok.gov

                                                  *s/ Meghan LeFrancois*
                                                  Meghan LeFrancois
                                                  Assistant Federal Defender